

**FILED**
**Oct 04, 2021**
**10:45 AM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Dustin Morton | ) Docket No. 2021-06-0129 |
| | ) |
| v. | ) State File No. 5478-2020 |
| | ) |
| Morsey Constructors d/b/a Harper | ) |
| Industries, et al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) |
| Compensation Claims | ) |
| Thomas L. Wyatt, Judge | ) |

---

### Reversed and Remanded

---

The employee, an ironworker, was injured when a metal panel fell from a roof, hit the ground, and struck him on the head and left shoulder, causing him to twist and fall on his right knee. The employee received authorized medical treatment for the knee injury and was eventually placed at maximum medical improvement and returned to work with no restrictions by his authorized physician. Upon returning to work, the employee reported experiencing pain in his neck and shoulder blades with numbness in his arms. The employee did not request medical treatment for his neck, upper back, and arm symptoms until more than one year after the work accident. The employer denied medical treatment for those conditions, citing a lack of medical proof establishing causation. Following an expedited hearing, the trial court determined that the employee was entitled to medical benefits for his alleged neck, upper back, and arm injuries without coming forward with any evidence of medical causation. The employer has appealed. Upon careful consideration of the record, we reverse the trial court's order and remand the case.

Judge Pele I. Godkin delivered the opinion of the Appeals Board in which Presiding Judge Timothy W. Conner and Judge David F. Hensley joined.

J. Allen Callison, Nashville, Tennessee, for the employer-appellant, Morsey Constructors d/b/a Harper Industries

Jeffrey P. Boyd, Jackson, Tennessee, for the employee-appellee, Dustin Morton

1

**Factual and Procedural Background**

On January 17, 2020, Dustin Morton ("Employee"), an ironworker employed by Morsey Constructors d/b/a Harper Industries ("Employer"), was injured in the course and scope of his employment when a large metal panel fell from a roof, hit the ground, and struck his left shoulder and head, causing his right knee to twist and him to fall. Employee was transported to Fast Pace Urgent Care Clinic where he complained of "pain in the right knee," reporting that something "fe[ll] off of a building and hit him in the left shoulder and his head and somehow he twisted his foot or leg and hurt his knee." Employee denied "back pain, muscle pain." He was provided with a knee brace and instructed to return in a week for a follow-up appointment if there was no resolution of his pain.

On January 24, 2020, Employee returned to Fast Pace Urgent Care Clinic with continued complaints of knee pain and was referred for an MRI, which revealed a tear of his anterior cruciate ligament ("ACL"). Employee was referred to an orthopaedic surgeon, and Employer provided a panel of physicians from which Employee selected Dr. David Moore. Dr. Moore first examined Employee on February 20, 2020, and diagnosed Employee with acute right knee pain, "[b]ucket-handle tear of the medial meniscus of [the] right knee," and "[r]upture of anterior cruciate ligament of [the] right knee." Dr. Moore assigned work restrictions and, on February 24, 2020, performed surgery on his knee.

At Employee's March 6, 2020 postoperative visit, Dr. Moore documented that Employee "denie[d] any unusual complaints or new injury" and was undergoing physical therapy. Employee continued physical therapy and remained on work restrictions for several months afterward. On August 27, 2020, during a visit with Dr. Moore, Employee complained of new lateral sided knee pain but "denied any [new] injury." Dr. Moore ordered a new MRI, which revealed an intact ACL graft and no new recurrent meniscal tears. On November 10, 2020, approximately ten months after the accident, Dr. Moore placed Employee at maximum medical improvement and allowed him to return to work without restrictions.

Following his medical release, Employee returned to work with Employer for a brief period of time before he was laid off. Employee found subsequent employment and worked in a fabrication shop for "four or five weeks" until that job was concluded. Employee stated he felt "more pain and that his arms would go numb" when he was "doing stuff or in an awkward position welding or fabricating." As a result, on February 2, 2021, Employee submitted a request for medical care to Employer through his attorney. On February 5, 2021, Employer sent a questionnaire to Dr. Moore, requesting further clarification regarding Employee's request for medical treatment, asking:

1.  At any time, has [Employee] requested treatment for or otherwise indicated that he sustained an injury to his neck or shoulder as a result of the at-work accident that occurred on January 17, 2020?

2

2. At any point have you deemed it necessary to recommend any treatment or evaluation for [Employee's] neck or shoulder as it relates to the at-work injury on January 17, 2020?

Dr. Moore replied "no" to both questions. As a result, Employer denied Employee's request for further medical treatment. On February 9, 2021, Employee filed a petition for benefits requesting, in part, a panel of physicians to treat his neck and shoulders. Following an unsuccessful mediation, a dispute certification notice was issued identifying medical benefits as a disputed issue. In the dispute certification notice, Employer asserted that Employee "never voiced any complaints until approximately [one] year after the accident" and disputed "whether Employee's neck and shoulder complaints are related to his work injury." Employee was later deposed and testified he did not personally request medical care for his neck or shoulder from the workers' compensation carrier, although he "casually" mentioned soreness in his neck and shoulders to the nurse case manager and his work supervisor. Employee agreed that any request for medical treatment "would have gone through [his] attorney."

In a July 12, 2021 expedited hearing, Employee testified that he had received no medical treatment for his neck, shoulder, or arms since the date of the work incident. On cross-examination, he testified as follows regarding whether he reported his neck and shoulder complaints:

Q: And you never told your supervisor during that time that you needed to go see a doctor about your neck or shoulder; is that correct?

A: Not to the point of, like, we need to go have a scan done on this thing, I'm in that much discomfort. But we talked about it being sore and stuff once I got moving.

Q: You had the adjuster's e-mail and phone number, correct?

A: Yes.

Q: You never sent her an e-mail or gave her a phone call saying, Hey, Jeanie, I need to see the doctor about my neck, did you?

A: No, sir.

Q: After you got discharged by Dr. Moore in November of 2020, you exchanged e-mails with Ms. Moxley, is that correct?

A: Yes, sir.

Q: During none of those e-mails did you ever say, Hey, Jeanie, I know we're talking about my knee here, but don't forget about my neck? You didn't do that, did you?

A: No, sir.

Employee also testified that, while he had the ability to contact his nurse case manager and adjuster, he did not request care through the workers' compensation insurer for his neck and shoulders until after he contacted an attorney.

The trial court determined Employee had presented sufficient evidence from which it could conclude he was likely to prevail at trial regarding his request for additional medical benefits and awarded medical benefits for Employee's neck and shoulders, stating that proof of medical causation is not required at an expedited hearing to obligate an employer to provide treatment. Employer has appealed.

**Standard of Review**

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2020). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2020).

**Analysis**

Employer asserts Employee failed to "[come] forward with sufficient evidence of a compensable injury to his neck or shoulder based on his failure to report any injury to his neck/shoulder to any medical provider or otherwise request medical care for those body parts for over one year." In support of its contention, Employer emphasizes that Employee acknowledged that he did not experience any pain in his neck until he became more active after surgery, and that he "did not report any pain in his neck to any of his medical providers . . . [and] never even testified that he believes that his neck problems are related

to this fall." Employer maintains that Employee's proof is insufficient for him to carry his burden of proof "even under the more relaxed *McCord* [*v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6 (Tenn. Workers' Comp. App. Bd. Mar. 17, 2015)] standard." Based upon our review of the record, we agree that Employee failed to provide sufficient evidence at the expedited hearing to indicate he is likely to prevail at trial in establishing entitlement to medical benefits for his alleged neck and shoulder conditions.

Generally, to be compensable, an injury must arise primarily out of and in the course and scope of employment and must cause disablement, death, and/or the need for medical treatment of the employee. Tenn. Code Ann. § 50-6-102(14) (2020). An injury "arises primarily out of and in the course and scope of employment" only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes. Tenn. Code Ann. § 50-6-102(14)(B). Here, there is no dispute regarding the compensability of Employee's knee injury, and Employer provided workers' compensation benefits associated with treatment for that injury. However, Employer disputed the compensability of Employee's alleged neck and shoulder injuries based on the significant delay from the occurrence of the accident to the request for medical treatment.

As we have previously stated, an employee need not prove each and every element of his or her claim by a preponderance of the evidence in order to obtain temporary disability benefits or medical benefits at an interlocutory stage of a case. *McCord*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9. However, an employee *does* bear the burden of coming forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits consistent with Tennessee Code Annotated section 50-6-239(d)(l). *Id.* Thus, an injured worker retains the burden of proof at all stages of a workers' compensation claim, and a trial court can grant relief at an expedited hearing if the court is satisfied that an employee has met the burden of showing that he or she is likely to prevail at a hearing on the merits. Tenn. Code Ann.§ 50-6-239(d)(l). Nevertheless, "[t]his lesser evidentiary standard, . . . does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).

Here, it is undisputed that a large, heavy panel fell from a roof and, after hitting the ground, struck Employee's head and shoulder while he was in the course and scope of his employment. Thus, we discern no error with the trial court's determination that Employee came forward with sufficient evidence to prove a work-related incident identifiable by time and place of occurrence. However, that finding does not end the inquiry.

In its order, the trial court emphasized that the hearing was "about a request for additional medical treatment [and] proof of medical causation is not required to obligate an employer to provide treatment." In addressing whether Employee's injury arose primarily out of and in the course and scope of his employment, the trial court relied, in part, on Employee's testimony that "he told [his] providers and in particular Dr. Moore that a heavy roofing panel hit his head and left shoulder." The trial court noted that Employee's testimony was "not necessarily incompatible" with that of Dr. Moore and stated that, although Employee did not request medical treatment for his neck and shoulders, "the *possibility remains* that he could have injured his neck and shoulders from the accident" and "[t]hat will be for a doctor to decide." (Emphasis added.) The court also "place[d] little weight" on medical records that solely focused on Employee's knee, finding they "[did] not prove that his alleged injuries did not arise primarily from the work accident."[1]

In reaching this result, the court relied on our decision in *McCord*. However, the facts of this case are distinguishable from those in *McCord*. In *McCord*, the employee testified without contradiction that she felt symptoms in her lower back while lifting boxes at work. *McCord*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *15-16. The employee's job included lifting boxes, and she visited the emergency room twice over the following two days with complaints of low back and right shoulder symptoms. *Id.* at *17. The employee reported the work injury to her employer four days after the work incident and attempted to give her on-site work supervisor "medical paperwork" that same day. *Id.* at *18. Based upon the totality of the evidence and the particular circumstances of that case, including that the request for medical treatment that occurred within a few days of the work incident, we concluded that the employee had come forward with sufficient evidence entitling her to a panel of physicians. *Id.*

The trial court also relied on our decision in *Lewis v. Molly Maid*, No. 2015-06-0456, 2016 TN Wrk. Comp. App. Bd. LEXIS 19, at *8-9 (Tenn. Workers' Comp. App. Bd. Apr. 20, 2016) for the proposition that medical proof is not required at an interlocutory stage of the case. In *Lewis*, the employee provided unrefuted testimony that she experienced back pain after operating a vacuum during her initial three days of training. The employee informed her trainer of her back pain, and the employer acknowledged being told of the employee's complaints. *Id.* at *7. Further, the employer was aware that the employee intended to go to an emergency room to obtain medical treatment for her back.

---

[1] In its brief on appeal, Employer also contends the trial court's "failure to make a finding of fact and conclusion of law that the at-work injury was more likely than not the primary cause of the need for medical care amounts to an order for a causation opinion 'for a doctor to decide.'" We previously addressed this issue in *Pool v. Jarmon D&Q Transport*, No. 2015-06-0510, 2016 TN Wrk. Comp. App. Bd. LEXIS 1 (Tenn. Workers' Comp. App. Bd. Jan. 4, 2016), when we stated: "While an injured worker who meets the applicable statutory requirements is entitled to medical benefits, there is no 'right to a causation opinion' as such. If a trial court determines that medical benefits are appropriate, the court can order the initiation of such benefits. However, it is the parties' responsibility to secure expert opinions or other evidence necessary to address any applicable burden of proof." *Id.* at *9-10 (citations omitted).

*Id.* The medical evidence supported the employee's allegation that she began suffering severe back pain that she attributed to using the vacuum cleaner. *Id.* at *8. Again, as in *McCord*, the request for medical treatment was close in time to the occurrence of the work incident. Thus, under the circumstances presented in that case, we agreed the employee had come forward with sufficient evidence to support the trial court's order compelling the employer to provide a panel of physicians. *Id.* at *9.

Here, unlike the employees in *McCord* and *Lewis*, Employee did not request medical treatment for his alleged neck or shoulder injuries until 54 weeks after the work incident, despite having access to an authorized physician, a nurse case manager, and an adjuster for over a year. In addition, Employee acknowledged that he did not ask Employer to provide medical treatment for his neck or shoulders during that 54-week period of time. Moreover, Employee provided *no* testimony that he believed his neck and shoulder problems were related to the work incident, and there is no medical proof in the record that Employee's neck and shoulder problems were causally related to the work incident. While Employee need not prove each and every element of his claim by a preponderance of the evidence to obtain medical benefits at an interlocutory stage of the case, given such a significant delay before his request for medical treatment, we conclude he must come forward with more than a mere allegation of alleged work-related injuries to support his claim for authorized medical treatment. In short, the length of time between a work accident and the request for medical treatment, while not dispositive, is a relevant factor to consider in the court's analysis of whether an employee is entitled to medical care at an interlocutory stage of the case.

It is undisputed that a heavy panel hit Employee's head and shoulder. However, it is also undisputed that over one year elapsed prior to his request for medical treatment for his neck, shoulders, and arms, during which time Employee could have discussed such issues with his authorized treating physician, the adjuster, the nurse case manager, and/or Employer. We are not persuaded that Employee's vague descriptions of "discomfort" months after the incident occurred is sufficient evidence at this stage of the proceedings to support a conclusion that he is likely to prevail at trial in establishing an entitlement to medical treatment for his neck and shoulders.

## Conclusion

Based on the record before us, we conclude the evidence preponderates against the trial court's interlocutory award of medical benefits for Employee's neck and shoulders. We reverse the trial court's expedited hearing order and remand the case. Costs on appeal are taxed to Employee.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Dustin Morton | ) | Docket No. 2021-06-0129 |
| | ) | |
| v. | ) | State File No. 5478-2020 |
| | ) | |
| Morsey Constructors d/b/a Harper | ) | |
| Industries, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Thomas L. Wyatt, Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 4th day of October, 2021.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Allen Callison | | | | X | allen.callison@mgclaw.com |
| Jeff Boyd | | | | X | jboyd@borenandboyd.com |
| Thomas L. Wyatt, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov